THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEG DEAVILLA FOX,

               Plaintiff,

      v.

HOLLAND AMERICA LINE, INC., *et al.*,

              Defendants.

CASE NO. C14-1081-JCC

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

       This matter comes before the Court on the motion for summary judgment by Defendants Holland America Line, Inc.; HAL Antillen N.V.; HAL Maritime Limited; and Holland America Line, N.V. (Dkt. No. 33). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES in part the motion for the reasons explained herein.

## I.    BACKGROUND

       In July 2011, Plaintiff Meg Deavilla Fox worked as a cast member on the M/S ZANDAAM, a Dutch cruise ship. (Dkt. No. 37-4 at 2; Dkt. No. 35-6 at 3.) On July 19, Plaintiff planned to take a crew-only spin class with instructor Tammerin Du Preez. (Dkt. No. 37-4 at 2; Dkt. No. 34 at 1.) Prior to class, Du Preez was setting up the bikes, which are stored without seats for safety purposes. (Dkt. No. 34 at 2.) Du Preez walked along and placed a seat on each of

1  the bikes. (Dkt. No. 34 at 2.) While she did so, the crew members, including Plaintiff, stood

2  nearby talking. (Dkt. No. 34 at 2; Dkt. No. 37-2 at 3.)

3         Unbeknownst to Plaintiff, her bike seat was not yet fastened. (Dkt. No. 37-2 at 3.) When

4  Plaintiff attempted to mount her bike, the seat slid backward and the metal post penetrated

5  Plaintiff's vulva, lacerating her right vagina. (Dkt. No. 37-2 at 3; Dkt. No. 37-6.) Plaintiff was

6  overcome with pain. (Dkt. No. 37-4 at 2.)

7         The ship's infirmary staff examined Plaintiff and decided against suturing her wound.

8  (Dkt. No. 37-4 at 2.) They discharged her with ice, a topical analgesic, pain medication, and

9  antiseptic wipes. (Dkt. No. 36-2 at 2; Dkt. No. 37-4 at 2.) Plaintiff asserts that the infirmary staff

10 provided her no further treatment for her injuries on July 19 or 20, 2011. (Dkt. No. 37-4 at 3.)

11        Plaintiff experienced continued pain and sought treatment at Bartlett Regional Hospital in

12 Juneau, Alaska on July 21, 2011. (Dkt. No. 37-4 at 3.) According to Plaintiff, the emergency

13 physician told her that her wound should have been sutured but that it was too late to do so at

14 that point. (Dkt. No. 37-4 at 3.) The Bartlett staff gave Plaintiff narcotic pain medication and

15 antibiotics. (Dkt. No. 36-4 at 2.)

16        Plaintiff returned to the ship, where she twice saw the infirmary staff to address a golf-

17 ball sized growth that had formed in her vagina. (Dkt. No. 36-5 at 2-3; Dkt. No. 37-4 at 4.)

18 Plaintiff maintains that the infirmary staff told her that the growth needed to be drained, but that

19 the head office would not allow that to happen on the vessel. (Dkt. No. 37-4 at 4.) Instead,

20 Plaintiff asserts, she was told she could bathe her wound in a bath at the infirmary, but she found

21 that bathing did not help with the growth or her pain. (Dkt. No. 37-4 at 4.)

22        Still in considerable pain, Plaintiff departed the vessel in Alaska on July 30, 2011 and

23 returned home to Boston, Massachusetts. (Dkt. No. 37-4 at 4.) There, she sought treatment from

24 Dr. Gloria Korta, an obstetrician and gynecologist. (Dkt. No. 37-5 at 6.) Dr. Korta incised the

25 growth and inserted a catheter to drain it. (Dkt. No. 37-4.) On August 18, 2011, Dr. Korta

26 removed the catheter and told Plaintiff she could return to work full duty with no restrictions in

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
PAGE - 2

1   10-14 days. (Dkt. No. 37-4 at 5.)

2       Plaintiff returned to the ZANDAAM on September 17, 2011 and finished out her

3   contract, which ended in February 2012. (Dkt. No. 37-4 at 5; Dkt. No. 36-8 at 2.) Plaintiff

4   received her unearned wages at the end of her contract. (Dkt. No. 37-4.)

5       On August 17, 2014, Plaintiff brought the instant suit against Defendants Holland

6   America Line, Inc.; HAL Antillen N.V.; HAL Maritime Limited; and Holland America Line,

7   N.V., asserting that that all Defendants employed her and owned the ZAANDAM. (Dkt. No. 1 at

8   1, 3-4.) She alleged four causes of action against each Defendant: Jones Act negligence,

9   unseaworthiness, failure to provide maintenance and cure, and punitive damages for the failure

10  to pay maintenance and cure. (*See, e.g.*, Dkt. No. 1 at 6-8.)

11      Defendants now move to dismiss all claims on summary judgment. (Dkt. No. 33.)

12  **II.    DISCUSSION**

13      **A.    Summary Judgment Standard**

14      The Court shall grant summary judgment if the moving party shows that there is no

15  genuine dispute as to any material fact and that the moving party is entitled to judgment as a

16  matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the

17  facts and justifiable inferences to be drawn therefrom in the light most favorable to the

18  nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for

19  summary judgment is properly made and supported, the opposing party must present specific

20  facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus.*

21  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the

22  outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence

23  for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49.

24  Ultimately, summary judgment is appropriate against a party who "fails to make a showing

25  sufficient to establish the existence of an element essential to that party's case, and on which that

26  party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

1    **B.    Motions to Strike**

2    *Plaintiff's Exhibits 1-6*

3    Defendants move to strike Plaintiff's Exhibits 1-6, asserting that they violate Local Civil

4  Rule 10(e)(10). (Dkt. No. 38 at 2.) Rule 10(e)(10) provides that "[a]ll exhibits must be marked to

5  designate testimony or evidence referred to in the parties' filings." This is not an issue here; on

6  the first page of each of Plaintiff's exhibits, there is a clear marker designating the number of the

7  exhibit. Defendants' motion to strike Exhibits 1-6 is DENIED.

8    *Dr. Rice's Report*

9    Defendants move to strike Exhibit 6, the report of gynecologist Dr. James Rice. (Dkt. No.

10 38 at 2.) Defendants first argue that the report is unauthenticated. (Dkt. No. 38 at 2.) To satisfy

11 the authentication requirement, the evidence's proponent must provide sufficient evidence to

12 support a finding that the item is what the proponent claims it is. Fed. Evid. R. 901(a). This can

13 include testimony of a witness with knowledge or the "appearance, contents, substance, internal

14 patterns, or other distinctive characteristics of the item, taken together with all the

15 circumstances." Fed. Evid. R. 901(b)(1), (4). Both methods are present here. Plaintiff's counsel

16 submitted a declaration averring that the exhibit is a true and correct copy of Dr. Rice's report.

17 (Dkt. No. 37-6 at 2.) And, the appearance, contents, and characteristics demonstrate that this is a

18 medical record. The Court is satisfied as to the report's authenticity.

19   Defendants next argue that the report contains hearsay, such as Plaintiff's statements

20 about what happened. (Dkt. No. 38 at 2-3.) But, Plaintiff does not offer Dr. Rice's report to

21 establish how she was injured. Rather, she offers Dr. Rice's report to introduce his opinion on

22 the level of her damages and his opinion that Defendants' response contributed to those

23 damages. (*See* Dkt. No. 37 at 8-9, 13.) His opinions on those points are not hearsay. And, an

24 expert may rely on inadmissible facts and data if such facts and data would be reasonably relied

25 upon by experts in the particular field. Fed. R. Evid. 703. Here, there is no suggestion that a

26 doctor would not rely on a patient's statements about how she was injured or her subsequent

1    treatment. Thus, Dr. Rice was entitled to rely on Plaintiff's statements to that effect.

2    　　　　Finally, Defendants argue that the report lacks foundation to attest to the sufficiency of

3    cure. (Dkt. No. 38 at 3.) But again, Plaintiff does not offer the report for that purpose. Dr. Rice's

4    report goes to Plaintiff's medical condition, not Defendants' legal obligation.

5    　　　　Defendants' motion to strike Dr. Rice's report is DENIED.

6    　　　　*Defendants' Exhibit 10*

7    　　　　Plaintiff moves to strike Defendants' Exhibit 10 to the Declaration of James P. Coldwell,

8    because it was never previously disclosed or provided to Plaintiff. (Dkt. No. 42 at 1.) Fed. R.

9    Civ. P. 37(c)(1) states that, if a party "fails to provide information or identify a witness as

10   required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

11   supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

12   justified or is harmless." Exhibit 10 is an income and expense report stating that Holland

13   America Line paid Plaintiff $1320.00 in maintenance. (Dkt. No. 40-1 at 2.) The report was never

14   disclosed in Defendants' Rule 26(a)(1) disclosures. (Dkt. No. 42-1 at 3.) Given that payment of

15   maintenance is a core issue in this case, and that Plaintiff explicitly requested documentation

16   detailing all maintenance payments (Dkt. No. 42-1 at 2), exclusion of the document is

17   appropriate. Plaintiff's motion to strike Exhibit 10 is GRANTED. The Court will not consider

18   Exhibit 10 in ruling on the motion for summary judgment. The Court reserves judgment on

19   whether Exhibit 10 may be offered at trial.

20   　　　　*Agent Argument*

21   　　　　Plaintiff moves to strike Defendants' argument that Du Preez was not Defendants' agent.

22   (Dkt. No. 42 at 2.) Defendants made this argument for the first time in their reply brief. (Dkt. No.

23   38 at 3-4.) Arguments not raised in an opening brief are deemed waived. *United State v. Romm*,

24   455 F.3d 990, 997 (9th Cir. 2006). Plaintiff's motion to strike that argument is GRANTED.

25   **C.    Jones Act Negligence Claims**

26   　　　　Defendants assert that Plaintiff's Jones Act negligence claims should be dismissed. (Dkt.

No. 33 at 15.) However, they did not present any analysis on this issue. (*See* Dkt. No. 33 at 13-15.) Instead, they discussed whether punitive damages are available under the Jones Act. (Dkt. No. 33 at 15.) But, Plaintiff does not seek punitive damages in conjunction with her Jones Act claims.[1] (*See, e.g.*, Dkt. No. 1 at 6.)  Defendants' motion to dismiss Plaintiff's Jones Act claims is DENIED.

### D.    Unseaworthiness Claims

Defendants assert that Plaintiff's unseaworthiness claims should be dismissed, because Plaintiff's injuries arose from an isolated act of operational negligence, rather than an unseaworthy condition of the ship. (Dkt. No. 33 at 17.)

The United States Supreme Court has "repeatedly taken pains to point out that liability based upon unseaworthiness is wholly distinct from liability based upon negligence." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). In *Usner*, the petitioner was injured while loading cargo aboard a vessel with his fellow employees. *Id.* at 494-95. The winch operator lowered the fall too far and too fast, striking the petitioner. *Id.* at 495. The petitioner alleged that his injuries had been caused by the ship's unseaworthiness. *Id.* at 495. The Court disagreed, distinguishing between a "defective condition of a physical part of the ship itself" amounting to unseaworthiness, and an "isolated, personal negligent act," which is what occurred in that case. *Id.* at 499-500.

As Plaintiff points out, however, Ninth Circuit authority establishes that a negligent act can give rise to a defective condition. *See Beeler v. Alaska Aggregate Corp.*, 336 F.2d 108 (9th Cir. 1964). Specifically, "[l]iability on the ground of unseaworthiness does not attach if the injury was sustained by the negligent use of a seaworthy appliance at the very moment of injury. It does attach if the negligent act has terminated and an appliance has been left in an unsafe condition." *Id.* at 109-10. For example, in *Beeler*, a longshoreman was injured while climbing a

---

[1] Nor does she seek punitive damages in conjunction with her unseaworthiness claims. (*See, e.g.*, Dkt. No. 1 at 6-7.)

1   ladder on the deck of a barge:

2          When Brown, one of Beeler's fellow longshoremen, reached the third or fourth
           rung from the bottom of the ladder, Beeler mounted the ladder and started to
3          descend. As Brown reached the deck, the walking boss, believing that Brown
           would stand by or would hold the ladder, walked away. Brown, having received
4          no instruction of this kind, failed to hold or guard the bottom of the ladder. The
           ladder slipped and Beeler fell to the deck.
5

6   *Id.* at 109. The *Beeler* court reasoned that the negligent actions consisted of "failing to act prior

7   to the accident by stepping forward to hold or watch the ladder." *Id.* at 110. By the time the

8   accident occurred, both other longshoremen had walked away. *Id.* Thus, the court concluded,

9   their negligence had terminated, rendering the ladder an unseaworthy condition. *Id.*

10         Here, Du Preez placed the seat onto the bike and moved on to the next bike before

11  Plaintiff mounted the bike. (Dkt. No. 34 at 2.) Du Preez asserts that it is her practice to

12  demonstrate to the class participants how to fasten and adjust their seats to avoid injury, but that

13  Plaintiff mounted the bike before Du Preez could stop her. (Dkt. No. 34 at 2.) Plaintiff's account

14  varies: she states that no instructions were given and that she had been standing there for five to

15  ten minutes before mounting the bike. (Dkt. No. 37-2 at 3.) Thus, there is a dispute of material

16  fact as to whether Du Preez's failure to secure the bike seat was a negligent action that

17  terminated prior to Plaintiff's accident. Defendants' motion to dismiss Plaintiff's

18  unseaworthiness claims is DENIED.

19         **E.      Failure to Provide Maintenance and Cure Claims**

20         Defendants argue that Plaintiff's failure to provide maintenance and cure claims should

21  be dismissed, because the evidence shows that Defendants paid all of Plaintiff's maintenance and

22  cure benefits. (Dkt. No. 33 at 10.) Plaintiff responds that there is a dispute of material fact as to

23  whether Defendants paid any maintenance. (Dkt. No. 37 at 15.)

24         Vessel owners have unique obligations to injured or ill employees. *Berg v. Fourth*

25  *Shipmor Assocs.*, 82 F.3d 307, 309 (9th Cir. 1996). Irrespective of fault, a vessel owner must pay

26  unearned wages, maintenance, and cure. *Id.* "Maintenance" is compensation for room and board

expenses incurred while the employee is recovering from the illness or injury. *Id.* "Cure" means medical care and attention, including the employee's medical expenses until he or she reaches maximum recovery. *Id.*; *Mullen v. Fitz Simons & Connell Dredge & Dock Co.*, 191 F.2d 82, 85 (7th Cir. 1951).

Defendants maintain that they have paid Plaintiff all the maintenance and cure due to her. (Dkt. No. 38 at 5.) They submit an expense report indicating that they paid Plaintiff $620.30 in "Medical Expense[s]" and $1320.00 in "Maintenance and Medical Benefits." (Dkt. No. 36-9 at 2.) They also cite to Plaintiff's deposition testimony, stating that it is "undisputed" that Defendants paid all maintenance and medical bills. (Dkt. No. 38 at 5-6.) But, Plaintiff's testimony is that her medical bills were paid "as far as [she] know[s]," but that "[i]t didn't really have anything to do with [her], so [she] can't confirm that." (Dkt. No. 35-1 at 6.) She also testified that she received her "normal pay," but not that she received compensation for room and board expenses. (*See* Dkt. No. 37-2 at 26.) In her affidavit, Plaintiff states that she "was never provided with a daily stipend to cover my room and board while I was off the vessel and injured." (Dkt. No. 37-4 at 5.) Thus, there is a dispute of material fact as to whether Defendants paid the required maintenance and cure. Defendants' motion to dismiss Plaintiff's failure to provide maintenance and cure claims is DENIED.

## F.   Punitive Damages

Finally, Defendants move to dismiss Plaintiff's claims for punitive damages. (Dkt. No. 33 at 7.) First, they argue that there is no evidence of any willful or wanton conduct, because the "undisputed material facts demonstrate that there was no wrongdoing by any HAL employee or that HAL failed to provide Plaintiff with maintenance and cure." (Dkt. No. 33 at 10.) But, as discussed above, there is a dispute of material fact as to whether Defendant indeed paid the required maintenance and cure. Moreover, Plaintiff provided evidence that Defendants failed, or even refused, to provide proper medical care. (*See* Dkt. No. 37-6 at 10; Dkt. No. 37-4 at 2-4.) Thus, a jury could find that an award of punitive damages is appropriate in this case. *See Atlantic*

1   *Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 414 (2009) (noting that failure of vessel owners

2   to provide proper medical care can support an award for punitive damages).

3       Second, Defendants argue that punitive damages are unavailable under the applicable law

4   in this case, which they assert is Netherlands law. (Dkt. No. 33 at 11-13.) Plaintiff responds that

5   general maritime law applies and that *Atlantic Sounding* establishes that punitive damages are

6   available in this type of case. (Dkt. No. 37 at 21.) In presenting their arguments, both parties rely

7   on the choice-of-law factors established in *Lauritzen v. Larsen*, 345 U.S. 571 (1953).

8       " 'In the absence of a contractual choice-of-law clause, federal courts sitting in admiralty

9   apply federal maritime choice-of-law principles derived from [*Lauritzen* and its progeny]. But

10  where the parties specify in their contractual agreement which law will apply, admiralty courts

11  will generally give effect to that choice.' " *Flores v. Amer. Seafoods Co.*, 335 F.3d 904, 916 (9th

12  Cir. 2003) (quoting *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296-97 (9th Cir. 1997)).

13  Here, there is a contractual choice-of-law clause seemingly ignored by the parties. The

14  employment contract provides that the controlling law "shall be governed exclusively by the

15  laws specified in the applicable Collective Bargaining Agreement or government-mandated

16  contract. In the absence of any such Agreement or specification, such disputes shall be governed

17  in all respects by the Laws of the British Virgin Islands." (Dkt. No. 35-6 at 37.) The Court finds

18  no collective bargaining agreement or government-mandated contract in the record, nor do the

19  parties point to any. In the event no such agreement exists, it would seem that the laws of the

20  British Virgin Islands apply. Neither party explains why the *Lauritzen* factors are relevant in

21  light of this provision.[2]

22      Moreover, if the *Lauritzen* factors do apply here, there is an important factual issue that is

23  unresolved: which Defendant owned the vessel. Defendants argued in a footnote that Holland

24  America Lines, Inc. did not own or operate the vessel or employ Plaintiff, and thus should be

25  _____

26      [2] Plaintiff briefly addresses the employment contract, but does so in the context of her
    *Lauritzen* discussion. (*See* Dkt. No. 37 at 23.)

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
PAGE - 9

1   dismissed. (Dkt. No. 33 at 7 n.1.) "Relegating substantive arguments to footnotes is dangerous

2   business." *F.D.I.C. v. Red Hot Corner, LLC*, 2014 WL 5410712 (D. Nev. Oct. 22, 2014).  "If an

3   argument is worth making, a party should put the argument in the body of its brief." *Bach v.*

4   *Forever Living Prods. U.S., Inc.*, 473 F.Supp.2d 1127, 1132 (W.D. Wash. Feb. 13, 2007).

5   Plaintiff did not explicitly address Defendants' argument, but asserts that Holland America Lines

6   "was the owner of the vessel *pro hac vice* at the time of the injury." (Dkt. No. 37 at 22.) Without

7   knowing which Defendant is the vessel's owner, the Court will be unable to determine the

8   shipowner's allegiance and thus unable to fully consider the *Lauritzen* factors. *See Villar v.*

9   *Crowley Maritime Corp.*, 782 F.2d 1478, 1480-82 (9th Cir. 1986) (discussing the relative

10   importance of the *Lauritzen* factors).

11       **Accordingly, the Court ORDERS the parties to submit additional briefing limited to**

12   **four issues**: (1) whether there is an applicable collective bargaining agreement or government-

13   mandated contract providing for a governing choice of law; (2) if there is no such agreement,

14   why the Court should not apply the laws of the British Virgin Islands; (3) whether punitive

15   damages are available under the laws of the British Virgin Islands; and (4) which Defendant is

16   the owner of the vessel. **Defendants shall file their supplemental brief not to exceed 10 pages**

17   **by Wednesday, February 3, 2016. Plaintiff shall file her supplemental brief not to exceed 10**

18   **pages by Friday, February 12, 2016.**

19   **III.    CONCLUSION**

20       For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 33) is

21   DENIED as to Plaintiff's negligence, unseaworthiness, and failure to provide maintenance and

22   cure claims. The Court reserves judgment on Defendants' motion to dismiss Plaintiff's punitive

23   damages claims and ORDERS the parties to provide supplemental briefing as directed above.

24       Additionally, given that the Court denies in part Defendants' motion, it is appropriate to

25   set a new date for trial. Should the parties wish to, they may offer proposed trial dates, which the

26   Court will consider in scheduling. If the parties have not offered proposed dates by Friday,

1   January 29, 2016, the Court will set the case for trial on its next available date.

2        DATED this 21st day of January 2016.

3

4

5

6

7

8   _____

9   John C. Coughenour
    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
PAGE - 11